**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE:<br>THE MATTER OF THE EXTRADITION<br>OF MARIO PEREZ MONROY | 1:06-CV-00418 OWW<br><br>ORDER RE: GOVERNMENT OF UNITED MEXICAN STATES' REQUEST FOR EXTRADITION |

## I.   INTRODUCTION

This matter is before the court at the request of the United Mexican States ("Mexico") for the extradition of Mario Perez Monroy ("Monroy").  Mexico is represented by McGregor W. Scott, United States Attorney, and Kathleen A. Servatius, Assistant United States Attorney ("Government").  Monroy is represented by Daniel J. Broderick, Federal Defender, and Robert W. Rainwater, Assistant Federal Defender.

Before the court for decision is the Government's request to extradite Monroy to Mexico filed on July 27, 2006.  (Doc. 15-1.) Monroy filed an opposition to the Government's request on July 31, 2006.  (Doc. 17.)

## II.   BACKGROUND

### A.   Procedural History

On March 24, 2006, the Honorable Sandra M. Snyder issued a provisional arrest warrant for Monroy, pursuant to the

1

Extradition Treaty between the United States and Mexico.  (Doc. 15-1 at 1.)  Mexico's formal request for extradition to the United States Department of State was filed on July 14, 2006.  (*Id*.)  Mexico has also submitted the following documents with the state department:

    1.  Formal documentation for crimes detailed in a warrant of arrest dated January 30, 2006.  (Doc. 13, Government's request for Extradition, Volume I, Ex. 13, Filed July 17, 2006);

    2.  Supplemental information which contains a certified copy of the warrant for arrest, authenticated and translated into English, dated July 12, 2006.  (Doc. 13, Government's request for Extradition, Volume II, Filed July 17, 2006);

    3.  Supplemental information which contains a certified copy of the positive identifications of the accused by the witnesses dated June 13, 2006.  (Doc. 13, Government's request for Extradition, Volume III., Filed July 17, 2006).

**B.  Statement of Facts**

Monroy is charged in Mexico with "qualified homicide" under Articles 126, 147, and 148 of the Criminal Code and the Criminal Procedures Code of the State of Baja California, United Mexican States.  (Doc. 15-1, Para. 9.)

On March 5, 2005, Martin Howard Irizar went to visit his mother, Leticia Irizar Garcia, at her home in Playas de Tijuana and was unable to locate her.  (Doc. 13, Volume I, Ex. 3, P. 63.) He noticed the front door was locked from the outside so he gained access through another door.  (*Id.*)  When he went inside, everything appeared to be in order, but one of the bedroom doors was closed.  (*Id.*)  He assumed it was his mother's boyfriend

sleeping and so he left. (*Id.*) Later that evening, he returned to the apartment and discovered the that the person "sleeping" was his mother and she was dead. (*Id.* at P. 64.) Martin Howard Irizar immediately informed the Police. (*Id.*) The medical examiner determined that Irizar Garcia was killed by manual strangulation, simulating suicide by anoxemia by hanging, between the hours of 5:40 and 7:40 a.m. on March 5, 2005. (*Id.*, Ex.11, P. 110-11.)

Alicia Estela Rivero Suarez, Leticia's neighbor, revealed to investigators that on March 4, 2005, Mario, Leticia's boyfriend, was coming to visit. (*Id.*, Ex. 7, P. 77.) According to Alicia, Leticia had informed her that Mario had violent tendencies, was jealous and aggressive, and on one occasion had threatened to kill Leticia with a knife. (*Id.* at P. 76.) Leticia explained that her children did not like Mario, and she would therefore try to hide her relationship with him. (*Id.*) Periodically, Leticia would ask Mario to leave her apartment when she knew her children were coming to visit. (*Id.*) On March 4, 2005, Leticia told Alicia that Mario had come to her apartment, and that she was going to make him leave the next morning, because her son was coming to visit. (*Id.* at P. 77.) When Mario heard this he got mad. (*Id.*)

Between 6 and 7 a.m. on March 5, 2005, Alicia and her boyfriend heard loud music coming from Leticia's apartment that lasted for two or three minutes. (*Id.*) Alicia's boyfriend yelled at his neighbor to turn down the music. (*Id.*) A couple minutes later, Alicia observed Mario leave Leticia's apartment and sit on the steps with his head in his hands. (*Id.*) Later

**3**

that morning she observed that the front door of Leticia's apartment had been padlocked from the outside. (*Id.*)

Leticia had also told Rosalva Montes Ponce, another neighbor, that Mario was going to stay at Leticia's place on March 4, 2005. (*Id.* at P. 82.) Rosalva also heard loud music playing for a few minutes in the early morning of March 5, 2005. (*Id.*) At one point, the music was turned down, and Rosalva heard Leticia moaning; however, she assumed that Leticia was having sexual relations with Mario. (*Id.*) Finally, the music had ended, and Rosalva did not hear anymore noise from her neighbor's apartment. (*Id.*) Leticia had also told Rosalva that Mario was a jealous person and that on several occasions he had hit Leticia. (*Id.* at P. 83.)

### III. <u>LEGAL STANDARD</u>

In order to find Monroy extraditable, the following must be shown (1) the extradition judge had jurisdiction to conduct extradition proceedings (2) the extradition court had jurisdiction over the fugitive (3) the treaty of extradition was in full force and effect (4) the crime fell within the terms of the treaty and (5) there was competent legal evidence to support a finding of extraditability. *Prasoprat v. Benov*, 421 F.3d 1009, 1013 (9th Cir. 2005). The only purpose of the extradition hearing is for the judge to determine whether the crime is extraditable and whether there is probable cause to support the charge. *Id.* at 1014. In other words, extradition must be allowed if there is a reasonable belief that the extraditee committed the crime and competent evidence supports that belief. *In re Extradition of Strunk*, 293 F. Supp. 2d 1117, 1121 (E.D.

Cal. 2003). "The judge in an extradition proceeding applies a standard similar to that of a preliminary hearing, determining whether the evidence justifies holding the accused for trial, not whether the evidence may justify a conviction." *Id.* The evidence must support probable cause to charge the crime. *Id*.

### IV. **ANALYSIS**

#### A. **The Court Has Jurisdiction to Conduct Extradition Proceedings**

18 U.S.C. § 3184 provides that any justice or judge of the United States is authorized to hear evidence to sustain the charge under the provisions of the proper treaty. Accordingly this court has jurisdiction over the extradition proceedings.

#### B. **The Court Has Jurisdiction Over Monroy**

The Eastern District court has jurisdiction over the defendant if they appear before the court. *In re Extradition of Mainero*, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997). Monroy is in custody within the Eastern District of California and has appeared before the court.

#### C. **The Treaty is in Full Force and Affect**

The law limits extradition to circumstances where the Treaty is in full force and effect. 18 U.S.C. § 3184. The Department of State presented a declaration from their Attorney-Adviser stating that the extradition Treaty between the United States of America and Mexico was submitted by the Government in support of its position that the Treaty is presently in full force and effect. (Doc. 13, Volume I, Ex. 1, P. 1-3.) Attached to the Declaration was a copy of the diplomatic note as well as a copy of the Treaty itself. The construction of a treaty by the

Department of State, while not conclusive upon courts called upon to construe it, is nevertheless given weight. *United States v. Lombera-Camorlinga*, 206 F.3d 882, 887 (9th Cir. 2000) (citing, *Kolovart v. Oregon*, 366 U.S. 187, 194 (1961)(while court's interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight).)  Thus deference is given to the State Departments opinion that the Treaty is in full force and effect.

**D.  The Offenses Monroy Is Charged With are Covered by the Treaty**

Article 2 of the Treaty states that "[e]xtradition shall take place, subject to this Treaty, for willful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year." (Doc. 13, Volume I, Ex.1, P. 22.)  The appendix states "murder or manslaughter" as one of the punishable offenses. (*Id.* at P. 36.)  Monroy has been charged with the crime of "Qualified Homicide." (*Id.* at 11.) Qualified homicide is punishable under Article 126 of the Criminal Code and the Criminal Procedures Code of the State of Baja California, United Mexican States for sixteen to thirty years of imprisonment. (*Id.* at 165.)

The acts underlying the offense are punishable in the United States as First Degree Murder under the California Penal Code Sections 187.  Cal. Pen. Code § 187.  The offense carries a statutory maximum punishment of death or imprisonment for 25

**6**

years to life.  Cal. Pen. Code § 190.  Thus, in both countries the charged offense is punishable by more than one year imprisonment and is therefore an extraditable offense.

**E.   Competent Legal Evidence Exists To Support Extradition**

The Treaty between the United States and Mexico calls for probable cause to be measured by the standards established in the requesting country (Mexico).  Article 3 of the Treaty says, in relevant part "Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place."  (Doc. 13, Volume I, Ex.1, P. 23.)  The court need only determine whether there is competent evidence to justify holding the respondent for trial, not whether the evidence is sufficient to justify conviction.  See, *Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir. 2005).  The probable cause standard is flexible.  The Supreme Court has acknowledged:

> Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standards are not readily, or even usefully, reduced to a neat set of legal rules.

*Ornelas v. U.S.*, 517 U.S. 690, 695-96 (1996). Consequently, "the extradition judge makes credibility determinations as to the competence of the evidence supporting probable cause." *In re Singh*, 170 F. Supp. 2d 982, 1023 (9th Cir. 2001).  "The credibility of witnesses and the weight to be afforded their testimony is solely within the province of the extradition

7

magistrate." *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986).

In a Ninth Circuit case with similar facts, the court determined that the judge needs to "determine whether there is any evidence sufficient to establish reasonable or probable cause that the fugitive committed the offense charged." *In re Extradition of Kraiselburd*, 786 F.2d 1395, 1399 (9th Cir. 1986) (internal quotations omitted). In *Kraiselburd*, Alicia Lia Solana and her mother were found murdered in their home in Bahia Blanca, Argentina. *Id.* at 1396. The investigation revealed that the defendant had threatened the victims because he was angry that Alicia Solana had spurned him. *Id.* In finding that the defendant's "motive and threats" supported a finding of probable cause, the court relied on "threatening letters written by appellant...witness statements alleging that appellant had threatened either victim...including statements by Alicia's father, brother, and boyfriend, as well as letters written by Alicia herself, all reporting threats to Alicia made by [defendant]." *Id.* at 1399.

Monroy agrees that the treaty requires the court to find probable cause that he committed the alleged crime. However, he disagrees that the documents submitted by Mexico establish probable cause. Monroy argues that the evidence merely shows he was romantically involved with the decedent and that he was seen in the area around the time of her death. Monroy argues that this evidence is insufficient to establish probable cause that he is responsible for her death. Monroy further states that the Government is only relying on two pieces of evidence: (1) that

**8**

Monroy "appeared to be distraught and upset" when he was seen coming rom his girlfriend's apartment (2) and that there was loud music coming from her apartment to cover her cries.  However, Monroy offers no evidence in his behalf to refute probable cause.

The Government offers additional evidence not mentioned by Monroy.  As in the case of *In re Extradition of Kraiselburd*, the Government has produced witness statements that assert that Monroy was a jealous boyfriend who got upset when Leticia told him he would have to leave when her children came over. (Doc. 13, Volume I, Ex. 3, P. 76-78) Witness statements reveal that Monroy had a history of violence toward Leticia, had tried to kill her with a knife,  and had made threats to kill her in the past. (*Id.*)  This testimony, along with evidence that loud music was heard coming from Leticia's apartment, Leticia made moaning sounds, that Monroy was seen leaving her apartment the morning of her death, the apartment was locked from the outside, and that Monroy was aggressive if he saw the victim with anyone else are sufficient to establish probable cause to hold Monroy for the charge of qualified homicide and trial in Mexico.

## V.   CONCLUSION

For the reasons stated above, it is **CERTIFIED** that the evidence submitted by the Government of Mexico is sufficient to establish probable cause to believe that Mario Perez Monroy has committed the offense of qualified homicide of Leticia Irizar Garcia.  The request for extradition of Monroy by Mexico is **GRANTED**.  The attorney for the Government of Mexico shall, within five (5) days following service of this order lodge a **CERTIFICATION OF EXTRADITABILITY** to be transmitted to the

Secretary of State of the United States including:
1. A certified copy of the **CERTIFICATION OF EXTRADITABILITY.**
2. A certified copy of this Memorandum Decision and Order.
3. A certified copy of the complaint and Request for Extradition and exhibits thereto.
4. A warrant shall issue upon the requisition of a duly authorized representative of Mexico for the surrender of Monroy.
5. Monroy shall continue to be detained pending final outcome of these proceedings.

**SO ORDERED.**
**Dated: August 30, 2006**

    _/s/ OLIVER W. WANGER_____
        Oliver W. Wanger
    **UNITED STATES DISTRICT JUDGE**